RECEIVED
IN ALEXANDRIA, LA

AUG 1 6 2006

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**ALEXANDRIA DIVISION**

| | |
|---|---|
| LAVELLE MYERS | CIVIL ACTION NO. 06-1207A |
| VS. | SECTION P |
| BURL CAIN, WARDEN | JUDGE DRELL |
| | MAGISTRATE JUDGE KIRK |

## REPORT AND RECOMMENDATION

Before the court is a petition for writ of *habeas corpus* (28 U.S.C. §2254) filed on July 17, 2006 by *pro se* petitioner Lavelle Myers. Petitioner is an inmate in the custody of Louisiana's Department of Public Safety and Corrections. He is incarcerated at the Louisiana State Penitentiary, Angola, Louisiana where he is serving the life sentence imposed following his June 2002 conviction for second degree murder in the Thirty-Fifth Judicial District Court, Grant Parish.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the court.

### Statement of the Case

The petition, memorandum, exhibits, and the published jurisprudence of the State of Louisiana establish the following relevant facts.

### Indictment and Trial

On June 5, 2001, the Grant Parish Grand Jury indicted

petitioner on a charge of second degree murder. [doc. 1-4, p. 2]

On June 14, 2001, petitioner's court-appointed attorney filed an application for appointment of a sanity commission. [doc. 1-4, p. 3] On April 29, 2002 the sanity commission's findings were presented to the court. One of the physicians appointed to the sanity commission testified; the other's findings were submitted in a written report. The court determined that petitioner was competent to stand trial and assist in his defense. [doc. 1-4, p. 4] On June 13, 2002 petitioner's court-appointed counsel again moved for a Sanity Commission. His motion was denied. [id.] Petitioner's attorney also moved to quash the indictment based upon the process utilized to select the grand jury foreperson. That motion was denied. [id.]

On June 17, 2002 the trial began. [id.] On June 19, 2002, the jury returned a verdict finding the petitioner guilty as charged. [doc. 1-4, p. 6]

On July 6, 2002 petitioner's attorney filed a motion for new trial and motion to preserve the evidence. [id.] On July 11, 2002 the motion to preserve evidence was granted. [doc. 1-4, p. 7] On July 25, 2002 petitioner's motion for a new trial was denied and petitioner was sentenced to serve life without parole. [id.]

**Appeal**

In due course, petitioner moved for an appeal. Appellate counsel was appointed and on December 2, 2002, petitioner's brief

was submitted to the Third Circuit Court of Appeals. [doc. 1-4, pp. 12-29] Petitioner argued six assignments of error:

> 1. The trial court erred in that the question of capacity to proceed was not subject to a full hearing, where over defense objection, one of the commission members did not testify and only submitted a written report.

> 2. The trial court erred in allowing inadmissable opinion testimony from an investigating officer, which testimony was highly prejudicial and not based on anything other than conjecture.

> 3. The trial court erred in that it did not suppress the testimony of 'inmate counsel' who secured information from the appellant on the pretense of 'representing' him before the courts of this state and therefore in violation of appellant's privilege to confidentiality of communications with his legal representatives.

> 4. The evidence is insufficient to support the verdict of guilty of second degree murder.

> 5. The trial court erred in that it refused to include the penalty for manslaughter when charging the jury as to that responsive verdict.

> 6. The indictment is a nullity because the court selected the Grand Jury foreperson in contravention of Article 413B of the Louisiana Code of Criminal Procedure. [doc. 1-4, p. 16]

On March 5, 2003 the Third Circuit Court of Appeals affirmed the conviction. State of Louisiana v. Lavelle Myers, 2002-1296 (La. App. 3 Cir. 3/5/2003), 839 So.2d 1183. [See also Slip Opinion, doc. 1-4, pp. 39-54]

Petitioner's court-appointed appellate counsel filed an Application for Writ of Certiorari in the Louisiana Supreme Court

on April 4, 2003.[1] [doc. 1-4, pp. 56-69] In the writ application,
counsel presented argument on only two of the assignments of
error raised on direct appeal:

> 1. The court of appeal erred in that the question of
> capacity to proceed was not subject to a full hearing,
> where over defense objection, one of the commission
> members did not testify and only submitted a written
> report, and the trial court refused to require live
> testimony. [doc. 1-4, p. 62]
>
> 2. The trial court erred in that it did not suppress
> the testimony of 'inmate counsel' who secured
> information from the appellant on the pretense of
> 'representing' him before the courts of this state and
> therefore in violation of the appellant's privilege to
> confidentiality of communications with his legal
> representatives. [doc. 1-4, p. 63]

On October 10, 2003 the Supreme Court denied writs. State of
Louisiana v. Lavelle Myers, 2003-0991 (La. 10/10/2003), 855 So.2d
330.

**Post-Conviction**

On or about February 3, 2004 petitioner's trial attorney
filed a Motion for Testing Evidence in the Thirty-Fifth Judicial
District Court. Therein it was alleged that despite three
requests prior to trial, certain items of evidence seized in
connection with the investigation had not been analyzed by the
crime lab. Counsel requested that items 6, 10, 18, 26, 27, 35,

---

[1] The application was received and filed in the Supreme Court on April
7, 2003, however, the pleadings were mailed on April 4, 2003 as evidenced by
the post-mark. [doc. 1-4, p. 55]

and 37 [2] "...be tested for post conviction relief." [doc. 1-5, pp. 3-8]

On or about May 13, 2004 petitioner filed a *pro se* Application for Post-Conviction Relief in the Thirty-Fifth Judicial District Court. [doc. 1-5, pp. 11-36] Petitioner argued three claims for relief:

> 1. Trial counsels were ineffective when they failed to cause Dr. Boppana to be subpoenaed as a witness for trial on the issue of Petitioner's sanity.

> 2. Trial counsels were ineffective when they failed to present in closing argument the penalty for manslaughter.

> 3. Petitioner's burden of proof to overcome the legal presumption of being sane is unfairly higher than the State's burden of proof to overcome the legal presumption of innocence; thus subjects Petitioner to an uneven playing field in the trial on the merits. [doc. 1-5, p. 24]

On July 13, 2004, the trial court ordered a hearing on petitioner's application for post-conviction relief and set August 12, 2004 as the date for the hearing. [doc. 1-5, p. 37]

On July 23, 2004 petitioner's trial attorney sent petitioner a copy of the Motion for Testing of Evidence along with a cover letter which stated in part, "Since your post conviction relief alleges ineffective counsel I can no longer work on your case as

---

[2] The items in question are identified on the Evidence Transfer Receipt from the North Louisiana Criminalistics Laboratory. Item 6 - fingernail scrapings from Lavelle Myers; Item 10 - shoes belonging to Lavelle Myers; Item 18 - fingernail scrapings and suspected hair found in victim's hand; Item 26 - one pair of camo gloves; Item 27 - one greenish latex glove with possible blood and hair; Item 35 - one hacksaw blade; Item 37 - one greenish latex glove. [doc. 1-5, pp. 4-8]

it would be a conflict of interest. I would recommend that you turn this over to your inmate counsel who can advise you accordingly." [doc. 1-5, p. 2]

On July 30, 2004 petitioner filed a "Motion to Upset Hearing Date and Re-Schedule" in the district court. In support of the motion petitioner noted his trial counsel's filing of the Motion for Testing Evidence and further stated, "Defendant now gives notice to this Honorable Court and the State that he desires to supplement his original application for post-conviction relief with an additional claim - that the results of DNA testing performed pursuant to an application granted under La. Code Crim. Proc. Art. 926.1 proves by clear and convincing evidence that the Defendant is factually innocent of the crime for which he was convicted." [doc. 1-5, pp. 38-41]

On September 24, 2004 petitioner filed a *pro se* Supplemental Memorandum of Law in support of his application for post-conviction relief. [doc. 1-5, pp. 42-53] He argued a single claim for relief:

> The results of DNA testing performed pursuant to an application granted under Article 926.1 proves by clear and convincing evidence that petitioner is factually innocent of the crime for which he was convicted. [*id.*, p. 49]

On or about October 11, 2004 petitioner filed a *pro se* Motion Requesting Re-Set of Evidentiary Hearing Date. On the same date the motion was granted and an evidentiary hearing was fixed

for October 28, 2004. [doc. 1-5, pp. 54-57]

The hearing was ultimately convened on November 4, 2004. [doc. 1-5, pp. 58 – doc. 1-6, pp. 1-23] Counsel had been appointed to represent the petitioner and he and a representative of the State argued the relative merits of petitioner's application for post-conviction relief. At the conclusion of the hearing, the court denied relief and stated,

> In connection with the defendant's application for post-conviction relief relative to Claim 1, I'm going with the Third Circuit ... and denying Claim 1. The same with Claim 2, I find no merit and I agree with the Third Circuit... And I also reject the burden of proof argument. So, all three of those are rejected ... and the application for post-conviction relief is dismissed. [doc. 1-6, p. 13]

With regard to the issue of testing the evidence, the State objected on procedural grounds to the testing of any evidence because petitioner had not submitted an affidavit attesting to his factual innocence as required by the provisions of LSA C.Cr.P. art. 926.1. A hand-written affidavit was then provided. [doc. 1-6, p. 24] The court then ordered "... that the hair in number 18 be tested, the glove or gloves in 26, 27, and 37, and 6, 10, and 35, are not to be tested..." [doc. 1-6, p. 20]

On the same date the court signed and issued a judgment denying relief on Claims 1, 2, and 3. With regard to the testing of evidence, the court granted relief as follows,

> ... that the Supplemental Claim for Post Conviction Relief regarding DNA testing is granted with regards to

> the 'suspected hair found in victim's hand' under Item
> #18 and further granted as to one sealed packet
> containing one pair of camo gloves as Item #26, and one
> sealed packet containing greenish latex glove with
> possible blood and hair in Item #27, and one sealed
> packet containing one greenish latex glove in Item
> #37...

The court further ordered that the testing be conducted by the

appropriate crime laboratory and paid for by the DNA Testing

Post-Conviction Relief for Indigents Fund as provided by

La.C.Cr.P. art. 926.1(K). [doc. 1-6, pp. 32-33]

On November 8, 2004 petitioner filed a *pro se* Notice of

Intent to seek writs and a request for the transcript of the

evidentiary hearing. [doc. 1-6, pp. 34-36] On November 16, 2004,

the trial court set a return date of December 19, 2004 and

ordered that a transcript be provided to the petitioner. [doc. 1-

6, p. 37]

On December 15, 2004 petitioner submitted his writ

application to the Third Circuit Court of Appeals. [doc. 1-6, pp.

38-50] The petitioner raised the following claims:

> (1) The District Court erred in denying Claims 1 and 2.
> [*id.*, p. 43]
>
> (2) Petitioner also raised as an issue, 'Did the
> District Court err in denying the testing of the
> fingernail scrapings from the Victim's hand (Item
> #18)?' [*id.*, p. 46]

However, petitioner did not argue this issue as a claim for

relief.

On January 28, 2005 the Third Circuit denied writs and

noted,

> Relator failed to meet his burden of proving that
> counsel was ineffective for failing to call witnesses
> at the sanity hearing and in failing to inform the jury
> of the penalty for manslaughter during closing
> arguments.
>
> Additionally, in his application to this court, Relator
> failed to address claim three of his Application for
> Post-Conviction Relief and the issue regarding testing
> of fingernail clippings. Accordingly, those issues are
> considered abandoned. Uniform Rules-Courts of Appeal,
> Rule 2-12.4. State of Louisiana v. Lavelle Myers, KH
> 04-01662 (La. App. 3 Cir. 1/28/2005) (unpublished).
> [doc. 1-6, p. 51]

On February 17, 2005 petitioner mailed an application for

writs to the Louisiana Supreme Court. [doc. 1-6, p. 52] The

application [doc. 1-6, pp. 53-72] raised these claims:

> (1) The courts below denied Petitioner due process
> and/or equal protection, in violation of the Fifth
> and/or Fourteenth Amendment to the United States
> Constitution, when they denied Petitioner's claim for
> post-conviction relief. [id., p. 62];
>
> (2) Trial counsels were ineffective when they failed to
> cause Dr. Boppana to be subpoenaed as a witness for
> trial on the issue of Petitioner's sanity. [id., p.
> 63]; and
>
> (3) Trial counsels were ineffective when they failed to
> present in closing argument the penalty for
> manslaughter. [id., p. 64]

Petitioner also filed a *pro se* "Motion to Stay in Abeyance"

wherein he noted,

> The District Court below has rendered only a partial
> judgment on Petitioner's application for post-
> conviction relief. Petitioner's current writ
> application in this Honorable Supreme Court only

relates to those claims which Petitioner has received a
final ruling upon and sought relief in the Circuit
Court below. Petitioner still has pending in the
District Court below a supplemental claim pertaining to
DNA testing. The District Court has ordered certain
pieces of evidence to be subjected to DNA testing; and
petitioner currently awaits the finalization of that
issue. Thus, petitioner respectfully moves the La.
Supreme Court to stay in abeyance any further
proceedings in the matter of his application for
Supervisory Writs, which is currently pending in the
La. Supreme Court until such time that the District
Court renders final judgment on Petitioner's pending
application for post-conviction relief. [doc. 1-6, p.
70]

On January 13, 2006 the Supreme Court denied writs. State of
Louisiana ex rel. Lavelle Myers v. State of Louisiana, 2005-0635
(La. 1/13/2006), 920 So.2d 228. Petitioner's subsequent request
for reconsideration was denied on May 26, 2006. State of
Louisiana ex rel. Lavelle Myers v. State of Louisiana, 2005-0635,
930 So.2d 8.

On or about July 17, 2006 petitioner filed his federal
petition for writ of *habeas corpus*. Petitioner argues six claims
for relief:

1. Trial court erred in that the question of capacity
to proceed was not subject to a full hearing when the
court allowed the written statements of the second
doctor to be read and entered into the record and not
having that doctor on the stand for cross-examination.

2. Trial court erred in that it refused to include the
penalty of Manslaughter when charging the jury as to
that responsive verdict.

3. The indictment is a nullity because the trial court
judge hand picked the grand jury foreperson that
presided over the grand jury according to LSA C.Cr.P.

art. 413(B).

4. Ineffective Assistance of Counsel - Petitioner's burden of proof to overcome the legal presumption of being sane is unfairly a higher burden than that of the State's burden of proof to overcome the legal presumption of innocence; thus subjects Petitioner to an uneven playing field in the trial on the merits.[3]

5. The State has erred in not performing the DNA test to evidence that was used at trial after being so ordered by the trial court at the evidentiary hearing as a result of Petitioner's Application for Post-Conviction Relief. As of this date there has been no DNA testing that would prove that the Petitioner is factually innocent of the charge in which he is being held. [doc. 1-3, pp. 8-9]

## Law and Analysis

### 1. *Exhaustion of State Court Remedies*

28 U.S.C. §2254 states, in pertinent part:

(b)(1) An application for a writ of *habeas corpus* on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that (A) the applicant has exhausted the remedies available in the courts of the State; or
(B)(i) there is an absence of available State corrective process; or
(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
        *            *          *
(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State,

---

[3] In his argument on this issue petitioner frames the claim as follows, "Ineffective assistance of counsel when counsel failed to cause the court to produce Dr. Boppana to testify at trial and petitioner's burden of proof to overcome the legal presumption of being sane is unfairly a higher burden than that of the state's burden of proof to overcome the legal presumption of innocence." [doc. 1-3, p. 14] Thus, Claim 4 may be said to consist of two separate claims - a claim of ineffective assistance of counsel and a claim which attacks the burden of proof concerning the issue of sanity. Hereinafter, the ineffective assistance claim will be referred to as Claim 4a and the burden of proof claim will be referred to as Claim 4b.

within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented. 28 U.S.C. § 2254.

This statute codified the jurisprudential rule of exhaustion which requires that state courts be given the initial opportunity to address and, if necessary, correct alleged deprivations of federal constitutional rights in state cases. Castille v. Peoples, 489 U.S. 346, 349, 109 S.Ct. 1056, 1059, 103 L.Ed.2d 380 (1989). This exhaustion doctrine serves "to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings." Rose v. Lundy, 455 U.S. 509, 518, 102 S.Ct. 1198, 1203, 71 L.Ed.2d 379 (1982). Federal and state courts are equally obliged to guard and protect rights secured by the Constitution, therefore, it would be inappropriate for a federal district court to upset a state court conviction without first giving the state court the opportunity to correct the alleged constitutional violation.

To have exhausted state remedies, a federal *habeas* petitioner must have fairly presented the substance of his federal constitutional claims to the state courts. Nobles v. Johnson, 127 F.3d 409, 420 (5th Cir.1997), cert. *denied*, 523 U.S. 1139, 118 S.Ct. 1845, 140 L.Ed.2d 1094 (1998). Exhaustion requires that any federal constitutional claim presented to the state courts be supported by the same factual allegations and legal theories upon which the petitioner bases his federal

claims. Picard v. Connor, 404 U.S. 270, 276, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971).

In addition, a federal *habeas* petitioner must fairly present his constitutional claim to the highest state court and in a procedurally correct manner. Skelton v. Whitley, 950 F.2d 1037, 1041 (5th Cir.), *cert. denied sub nom.* Skelton v. Smith, 506 U.S. 833, 113 S.Ct. 102, 121 L.Ed.2d 61 (1992); Richardson v. Procunier, 762 F.2d 429, 431 (5th Cir.1985); Carter v. Estelle, 677 F.2d 427, 443 (5th Cir.1982), *cert. denied*, 460 U.S. 1056, 103 S.Ct. 1508, 75 L.Ed.2d 937 (1983); Deters v. Collins, 985 F.2d 789, 795 (5th Cir.1993)(The exhaustion requirement demands that an applicant "fairly apprise the highest court of his state of the federal rights which were allegedly violated" and to do so "in a procedurally correct manner.") In Louisiana, the highest state court is the Louisiana Supreme Court.

Petitioner has raised six claims for relief in his federal *habeas corpus* petition and these claims may be summarized as follows: (1) Trial court erred when it determined petitioner's capacity to proceed without a full hearing; (2) trial court erred when it refused to include the penalty for manslaughter in the jury charge; (3) the indictment is a nullity because the trial court picked the foreperson; (4) ineffective assistance of counsel based on counsel's failure to subpoena Dr. Boppana to testify at the sanity hearing; (4)(a) unfair burden of proof on

the issue of capacity to proceed; (5) failure of the state to perform court-ordered DNA testing of evidence.

## Claim 1 – Capacity to Proceed

Petitioner's court appointed appellate counsel argued error in the determination of petitioner's capacity to proceed as Assignment of Error Number 1 on direct appeal to the Third Circuit Court of Appeals. [see doc. 1-4, p. 16] Thereafter, counsel argued this claim as Assignment of Error Number 1 in his writ application to the Louisiana Supreme Court. [doc. 1-4, p. 63] It thus appears that this claim was exhausted.

## Claim 2 – Failure to charge jury, Manslaughter Penalty

Petitioner's court-appointed appeals attorney raised the issue of the court's refusal to inform the jury of the penalty for manslaughter as Assignment of Error Number 5 in petitioner's direct appeal to the Third Circuit Court of Appeals. [doc. 1-4, p. 16] However, he did not raise this claim in his subsequent writ application to the Louisiana Supreme Court. [doc. 1-4, p. 63] Nor did petitioner raise this claim in his applications for post-conviction relief. Claim Two remains unexhausted.

## Claim 3 – Grand Jury Foreperson

Petitioner's appeal counsel argued the grand jury claim as Assignment of Error Number 6 on direct appeal to the Third Circuit Court of Appeals. [doc. 1-4, p. 16] However, counsel did not thereafter raise this claim in his writ application to the

Louisiana Supreme Court. [doc. 1-4, p. 63] Nor did petitioner raise this claim in his subsequent applications for post-conviction relief. Therefore, Claim Three remains unexhausted.

## Claim 4a - Ineffective Assistance of Counsel (Failure to Subpoena Dr. Boppana to testify at Trial)

Petitioner raised his ineffective assistance of counsel claim as Ground One in his *pro se* Application for Post-Conviction Relief. [doc. 1-5, pp. 24] When the district court denied relief on this claim, petitioner raised it as an aspect of Claim 1 in his writ application to the Third Circuit Court of Appeals. [doc. 1-6, p. 43] Following the Third Circuit's judgment denying relief, petitioner raised this claim as Claim 2 in his writ application in the Louisiana Supreme Court. [doc. 1-6, p. 63] It thus appears that this claim is exhausted.

### Claim 4b - Burden of Proof on the issue of Sanity

Petitioner argued issues concerning the burden of proof relative to sanity as Claim 3 in his *pro se* Application for Post-Conviction Relief. [doc. 1-5, p. 24] However, after the claim was denied by the district court, petitioner failed to include it in his writ application to the Third Circuit Court of Appeals. [doc. 1-6, pp. 38-50] As a matter of fact, the Third Circuit noted this fact and determined that petitioner had abandoned this claim. See State of Louisiana v. Lavelle Myers, KH04-01662 (La. App. 3 Cir. 1/28/2005) (unpublished). [doc. 1-6, p. 51] The claim was also

not addressed in the *pro se* application for writs filed in the Louisiana Supreme Court. Therefore, petitioner's claim relating to the burden of proof remains unexhausted.

### Claim 5 - Failure to Perform Court-Ordered DNA Testing

Since petitioner prevailed on this claim in the District Court, he did not thereafter raise the issue in his writ applications before the Third Circuit and the Louisiana Supreme Court. It does not appear that petitioner has ever sought to enforce the order of the District Court with regard to the testing of evidence. Thus, it appears that this claim also remains unexhausted. However, since petitioner may still have state remedies available to vindicate his claims, a fuller discussion of this claim for relief follows as Part 5.

## 2. "Technically Exhausted" and Procedurally Defaulted Claims

While Claims 2 (Jury Charge), 3 (Grand Jury Foreperson) and 4b (Burden of Proof, Issue of Sanity) appear not to have been properly exhausted, they could now be said to be "technically exhausted" since petitioner cannot now litigate those claims in the Louisiana courts.[4] Therefore, it is safe to conclude that

---

[4] Petitioner could not now raise these claims in the Louisiana Supreme Court. Supreme Court Rule X, §5(a) provides: "An application seeking to review a judgment of the court of appeal ... shall be made within thirty days of the mailing of the notice of the original judgment of the court of appeal... No extension of time therefor will be granted." (Emphasis supplied) Therefore, to the extent that any of these claims were raised in the district court or the court of appeals, the time limit for litigating these claims in the Louisiana Supreme Court has long expired. Nor could petitioner commence the post-conviction process anew in the district court. La. C.Cr.P. art. 930.4(D) provides, "A successive application may be dismissed if it fails to raise a

state court remedies are no longer available. <u>Engle v. Isaac</u>, 456 U.S. 107, 125 n. 28, 102 S.Ct. 1558, 1570-71 n. 28, 71 L.Ed.2d 783 (1982); 28 U.S.C. §2254(c). However, these "technically exhausted" claims are now considered to be "procedurally defaulted." Thus, these three *habeas corpus* claims are subject to dismissal under the procedural default doctrine.

The procedural default doctrine bars federal *habeas corpus* review when a state court declines to address a petitioner's federal claims because the petitioner has failed to follow a state procedural rule. <u>Coleman v. Thompson</u>, 501 U.S. 722, 729, 111 S.Ct. 2546, 2553-54, 115 L.Ed.2d 640 (1991). "[I]n all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal *habeas* review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Id.* at 750-51.

---

new or different claim." Finally, a second application for post-conviction relief would be time-barred by the provisions of LSA C.Cr.P. art. 930.8 which provides a two year period of limitation for the filing of such applications; the two year period is reckoned generally from the date upon which the judgment of conviction became final under Louisiana law. Petitioner's judgment of conviction became final under Louisiana law on October 10, 2003 when the Louisiana Supreme Court denied writs (<u>State of Louisiana v. Lavelle Myers</u>, 2003-0991 (La. 10/10/2003), 855 So.2d 330) on direct review. See La. C.Cr.P. art. 922(D).

With regard to Claim 5 (DNA testing), this claim raises an issue not directly related to petitioner's conviction. Here, petitioner seeks merely to enforce the November 4, 2004 order of the Thirty-Fifth Judicial District Court.

This doctrine ensures that federal courts give proper respect to state procedural rules. *Id*.

Furthermore, the doctrine presumes that a state court's express reliance on a procedural bar functions as an independent and adequate ground in support of the judgment. <u>Sones v. Hargett</u>, 61 F.3d 410, 416 (5th Cir. 1996). However, a petitioner can rebut this presumption by establishing that the procedural rule is not strictly or regularly followed. <u>Moore v. Roberts</u>, 83 F.3d 699 (5th Cir. 1996). The burden in on the petitioner to show that a state did not strictly and regularly follow the procedural bar at the time pertinent to his state court action. <u>Stokes v. Anderson</u>, 123 F.3d 840, 843 (5th Cir. 1999); <u>Amos v. Scott</u>, 61 F.3d 333, 342, (5th Cir. 1995); <u>Sones</u>, 61 F.3d at 416. In bearing the burden, the petitioner must demonstrate that the state failed to apply the procedural bar to claims which are identical or similar to the claims raised by him. <u>Stokes</u>, 123 F.3d at 860; <u>Amos</u>, 61 F.3d at 340.

When state remedies are rendered unavailable by the petitioner's own procedural default, federal courts are normally barred from reviewing those claims. See <u>Coleman v. Thompson</u>, 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991), "[I]f the petitioner failed to exhaust state remedies and the court to which petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims

procedurally barred, ... [then] there is a procedural default for purposes of federal *habeas*...." *Id*. at 735 n. 1, 111 S.Ct. at 2557 n. 1.

It is clear that Claims 2 and 3 were not exhausted because petitioner's court-appointed appellate attorney omitted these issues from his Supreme Court writ application on direct review. It is likewise clear that petitioner himself abandoned Claim 4b by failing to present the claim in his writ applications to the Third Circuit Court of Appeals and the Supreme Court following the denial of his application for post-conviction relief. It is also reasonable to conclude that petitioner is now unable to pursue these claims in the courts of Louisiana. Therefore, these claims have been, for all practical purposes, procedurally defaulted. See Steele v. Young, 11 F.3d 1518, 1524 (10th Cir.1993), (cited with approval in Sones v. Hargett, 61 F3d 410, 416 (5th Cir. 1995)), ("[I]f it is obvious that the unexhausted claim would be procedurally barred in state court, we will forego the needless 'judicial ping- pong' and hold the claim procedurally barred from *habeas* review").

In short, Claims 2, 3, and 4b are "technically exhausted" but now procedurally defaulted.

### 3. *Cause and Prejudice or Actual Innocence*

The procedural default bar may be overcome by demonstrating either cause and prejudice for the default or that a fundamental

miscarriage of justice would result from the court's refusal to consider the claim. Gray v. Netherland, 518 U.S. 152, 116 S.Ct. 2074, 135 L.Ed.2d 457 (1996); Murray v. Carrier, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); Coleman, 501 U.S. at 750 (quoting, Wainwright v. Sykes, 433 U.S. 74, 84, 97 S.Ct 2497, 2505, 53 L.Ed. 2d 594 (1972)).

In order for a *habeas* petitioner to avoid a procedural bar by showing a fundamental miscarriage of justice, the petitioner must assert his actual innocence by showing that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Murray, 477 U.S. at 478. Corwin v. Johnson, 150 F.3d 467, 473 (5th Cir. 1998); Glover v. Cain, 128 F.3d 900, 904 (5th Cir. 1997); Ward v. Cain, 53 F.3d 106, 108 (5th Cir. 1995). In order to show that a failure to consider the claim will result in a "fundamental miscarriage of justice" the *habeas* petitioner must show, "... as a factual matter, that he did not commit the crime of conviction." Fairman v. Anderson, 188 F.3d 635 (5th Cir.1999) (citing Ward v. Cain, 53 F.3d 106, 108 (5th Cir.1995). To establish such actual innocence, petitioner must "support his allegations with new, reliable evidence that was not presented at trial and must show that it was 'more likely than not that no reasonable juror would have convicted him in light of the new evidence.'" *Id.* (citing *Schlup v. Delo*, 513 U.S. 298, 327, 115 S.Ct. 851, 130 L.Ed.2d 808

(1995)). Petitioner offers no such evidence of actual
innocence.[5]

In order for a *habeas* petitioner to avoid a procedural bar
by showing cause and prejudice, the petitioner must show that
"some objective factor external to the defense" prevented the
petitioner from properly raising the claim in state court.
McClesky v. Zant, 499 U.S. 467, 111 S.Ct. 1454, 113 L.Ed.2d 517
(1991)(quoting, *Murray*, 477 U.S. at 488) (emphasis supplied). In
this case, petitioner can only fault himself and his court-
appointed appellate attorney for the failure to include all of
the appeal and post-conviction claims in the subsequent writ
applications to the Louisiana Supreme Court both on direct review
and in post-conviction litigation.[6]

---

[5] Petitioner, of course, asserts his actual innocence, and, presumably,
the results of the DNA testing he claims to be entitled to may provide
sufficient evidence to establish his actual innocence. Nevertheless, for the
purposes of this Report and Recommendation, the undersigned finds that
petitioner has not submitted sufficient evidence of "actual innocence" so as
to defeat the dismissal of petitioner's technically exhausted but procedurally
defaulted claims.

[6] Petitioner may argue that the deficient performance of his court-
appointed appellate counsel caused the default of Claim 2 and 3. "Attorney
ignorance or inadvertence is not 'cause' because the attorney is the
petitioner's agent when acting, or failing to act, in furtherance of the
litigation, and the petitioner must 'bear the risk of attorney error .'"
Coleman, 501 U.S. at 753, 111 S.Ct. 2546, 115 L.Ed.2d 640 (quoting Murray v.
Carrier, 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986)). While
ineffective assistance of counsel is sufficient cause for excusing a
procedural default, "attorney error short of ineffective assistance of
counsel" in the constitutional sense "does not constitute cause for a
procedural default..." Murray, 477 U.S. at 492, 106 S.Ct. 2639, 91 L.Ed.2d
397; see Edwards v. Carpenter, 529 U.S. 446, 451, 120 S.Ct. 1587, 146 L.Ed.2d
518 (2000). "In other words, ineffective assistance adequate to establish
cause for the procedural default of some other constitutional claim is itself
an independent constitutional claim," which generally must first be raised in
state court. Id. (citing Murray, 477 U.S. at 489, 106 S.Ct. 2639, 91 L.Ed.2d
397). The failure of appellate counsel to argue these clearly non-meritorious

In any event, "[i]n addition to cause, [a procedurally defaulted *habeas* petitioner] must show actual prejudice to overcome the procedural bar." United States v. Guerra, 94 F.3d 989, 994 (5th Cir.1996) (internal quotations omitted). "The movant makes this showing where he demonstrates that, but for the error, he might not have been convicted." *Id.* (emphasis supplied); See also Pickney v. Cain, 337 F.3d 542, 545 (5th Cir. 2003). Even if petitioner were to establish cause for his default, it appears unlikely that he could establish prejudice since he has provided no reason to suspect that the Supreme Court (or any court) would have ruled favorably on his defaulted claims.

In short, the *habeas corpus* claims presented in Claim 2 (Jury Charge), Claim 3 (Grand Jury Foreperson), and Claim 4b (Burden of Proof/Sanity) were not properly exhausted because these claims were not litigated in the Louisiana Supreme Court in a timely and procedurally correct manner. These claims, however, are now technically exhausted since petitioner cannot now litigate these claims in the courts of Louisiana. These technically exhausted claims are now procedurally defaulted. Since petitioner can show neither cause nor prejudice nor actual

---

claims in the subsequent writ application simply cannot be equated with ineffective assistance of counsel. If anything, counsel's decision to omit these claims was probably a strategic decision to litigate the stronger claims.

innocence, all three of these claims should be dismissed with prejudice as procedurally defaulted.

## *4. Rule 4 Considerations*

Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts provides that following examination of the pleadings by the court, "If it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the petitioner to be notified." (See also Kiser v. Johnson, 163 F.3d 326, 328 (5th Cir. 1999), "The district court has the power under Rule 4 to examine and dismiss frivolous *habeas* petitions prior to any answer or other pleading by the state. This power is rooted in 'the duty of the court to screen out frivolous applications and eliminate the burden that would be placed on the respondent by ordering an unnecessary answer.' 28 U.S.C. foll. § 2254 Rule 4 Advisory committee Notes.")

Based upon the court's review of the pleadings and exhibits, it is recommended that Claims 1 (sanity hearing) and 4a (ineffective assistance of counsel) be summarily dismissed for the reasons that follow:

Claims 1 and 4a are related to one another, and, as shown above, both of these claims were arguably exhausted in the State Courts. Both claims involve the determination that petitioner

was capable of proceeding to trial and capable of assisting counsel in the defense of the charges.

### Claim 1 (Sanity Hearing)

Claim 1 is identical to petitioner's Assignment of Error Number One on direct appeal. In dealing with this claim for relief, the Third Circuit made the following observations:

> The defendant questions the procedural correctness of the sanity hearing in this assignment of error. Specifically, the defendant asserts that the trial court did not hold a full sanity hearing because it accepted the report of one of the doctors without hearing his testimony.
>
> At the April 29, 2002 hearing, the state filed the written report of Dr. Belaga dated April 24, 2002, and rested. Counsel for the defendant immediately objected to the introduction of the report in particular and the proceedings in general. His general objection was based on the fact that the other member of the sanity commission, Dr. Boppana, was not present. The trial court overruled these objections, and the defendant called Dr. Belaga to the stand for cross examination.
>
> In rendering its ruling on the sanity issue, the trial court had both Dr. Belaga's report and his testimony to consider.
>
> Louisiana Code of Criminal Procedure Article 647 provides: The issue of the defendant's mental capacity to proceed *shall* be determined by the court in a contradictory hearing. The report of the sanity commission *is admissible* in evidence at the hearing, and members of the sanity commission *may* be called as witnesses by the court, the defense, or the district attorney. Regardless of who calls them as witnesses, the members of the commission are subject to cross-examination by the defense, by the district attorney, and by the court. Other evidence pertaining to the defendant's mental capacity to proceed may be introduced at the hearing by the defense and by the district attorney. (Emphasis added.)

The transcript of the April 29, 2002 hearing
establishes that the issue before the trial court was
the defendant's capacity to assist his attorneys. On
this issue, a defendant is presumed to be sane. La.R.S.
15:432. The defendant bears the burden by a
preponderance of the evidence. State v. Burmaster,
97-517 (La.App. 3 Cir. 2/25/98), 710 So.2d 274.
However, the fact that Dr. Boppana did not participate
by report or testimony does not in itself suggest an
error. Having the burden of proof on the issue before
the trial court, the defendant was free to subpoena Dr.
Boppana or any other doctor that might be helpful to
his case. Furthermore, '[t]he law presumes the
defendant's sanity.... While a court is permitted to
receive the aid of expert medical testimony on the
issue, the ultimate decision of competency is the
Court's alone.' State v. Bibb, 626 So.2d 913, 927-28
(La.App. 5 Cir.1993), writ denied, 93-3127
(La.9/16/94), 642 So.2d 188 (citations omitted).

In arguing that the trial court erred in considering
the testimony of only one of the sanity commission
doctors, the defendant cites this court to the holding
in State v. Green, 94-0034 (La.App. 4 Cir. 2/16/94),
632 So.2d 1187, writ denied, 94-0672 La.4/29/94), 637
So.2d 464, wherein the trial court appointed only one
physician to examine the defendant and determined his
competency without holding a contradictory hearing. The
fourth circuit concluded that these actions did not
comply with the sanity commission membership
requirement of La.Code Crim.P. art. 644(A) or the
contradictory hearing requirement of La.Code Crim.P.
art. 647.

In the matter currently before this court, the trial
court appointed two physicians and held a contradictory
hearing. Each of the sanity commission doctors
evaluated the defendant and submitted reports. We find
no authority for the defendant's assertion that the
trial court is required either to hear testimony from
both doctors or to consider both reports on the record.
We find no merit in this assignment of error. State v.
Myers, 2002-1296 (La.App. 3 Cir. 3/5/03), 839 So.2d
1183, 1188-89.

Petitioner frames the issue before the court as, "...whether

there was an adequate opportunity for the defense to present
evidence supporting a preponderance of the evidence..." with
regard to the issue of petitioner's capacity to stand trial. In
<u>Medina v. California</u>, 505 U.S. 437, 449, 112 S.Ct. 2572, 2579,
120 L.Ed.2d 353, cited with approval by the petitioner [see doc.
1-3, p. 11], the Supreme Court reasoned,

> Our cases recognize that a defendant has a
> constitutional right 'not to be tried while legally
> incompetent,' and that a State's 'failure to observe
> procedures adequate to protect a defendant's right not
> to be tried or convicted while incompetent to stand
> trial deprives him of his due process right to a fair
> trial.' <u>Drope v. Missouri</u>, 420 U.S., at 172, 173, 95
> S.Ct., at 904. <u>Once a State provides a defendant access
> to procedures for making a competency evaluation,
> however, we perceive no basis for holding that due
> process further requires the State to assume the burden
> of vindicating the defendant's constitutional right by
> persuading the trier of fact that the defendant is
> competent to stand trial.</u> (emphasis supplied)

Here, due process only required that petitioner be afforded
the opportunity to establish incapacity to proceed. That
opportunity was clearly provided to the petitioner.

The procedures afforded by the laws of Louisiana, and, more
specifically, the procedures available to the petitioner prior to
trial all pass constitutional muster. Petitioner's first claim
for relief is manifestly without merit.

### Claim 4a (Ineffective Assistance of Counsel)

As stated above, petitioner's Claim 4a is integrally related
to Claim 1. Petitioner argues, "Ineffective assistance of counsel

when counsel failed to cause the court to produce Dr. Boppana to testify at trial..." [doc. 1-3, p. 14] In this claim, petitioner concedes that his attorney's objection at the sanity hearing (the very same objection argued in Claim 1, *supra*) "...was properly overruled." [doc. 1-3, p. 16] He thereafter argues that counsel's failure to subpoena Dr. Boppana for trial to testify concerning petitioner's capacity to proceed amounted to ineffective assistance of counsel.

In order to prevail on this claim, petitioner must show, "...that counsel's performance was deficient..." and "...that the deficient performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). With regard to the required showing of prejudice, Strickland mandates that the petitioner show, "... that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. 687. Even if deficient performance is assumed in this case, petitioner cannot prevail because he has not made the requisite showing of prejudice.

In order to show prejudice based on counsel's failure to subpoena Dr. Boppana, petitioner must demonstrate that had Boppana testified, he have testified that petitioner lacked the capacity to proceed, and, that his testimony would have been sufficient to rebut the contrary testimony of his colleague and

thus negate the presumption of sanity. Petitioner has not, nor can he, make such a showing. Under Louisiana law, the judge ultimately determines a defendant's capacity to proceed, and his decision is afforded great deference even if the experts he relies upon have differing opinions on the issue. See, State v. Leason, 477 So.2d 771 (La. App. 1 Cir.1985) (The determination that the defendant was mentally competent to proceed to trial, based on conflicting medical testimony, was not abuse of trial court's discretion.); State v. Rogers, 419 So.2d 840 (La. 1982)(In determining whether a defendant is competent to stand trial, the court may receive aid in the form of expert medical testimony, but the court may not commit the ultimate decision of competency to a physician or anyone else.)

In short, since petitioner cannot show prejudice as a result of his attorney's performance, petitioner's claim of ineffective assistance of counsel must be denied.

## 5. *Claim 5 - DNA Testing*

As shown above, petitioner's final claim for relief remains unexhausted because petitioner has never subjected the State's failure to comply with the Thirty-Fifth Judicial District Court's order to conduct DNA testing to any level of review by any of the courts of Louisiana.

As noted, the Thirty-Fifth Judicial District Court ruled, "... that the Supplemental Claim for Post Conviction Relief regarding

DNA testing is granted with regards to the 'suspected hair found in victim's hand' under Item #18 and further granted as to one sealed packet containing one pair of camo gloves as Item #26, and one sealed packet containing greenish latex glove with possible blood and hair in Item #27, and one sealed packet containing one greenish latex glove in Item #37..." The court further ordered that the testing be conducted by the appropriate crime laboratory and paid for by the DNA Testing Post-Conviction Relief for Indigents Fund as provided by La.C.Cr.P. art. 926.1(K). [doc. 1-6, pp. 32-33]

Petitioner contends that the State of Louisiana has not yet complied with this order of the Thirty-Fifth Judicial District Court. [doc. 1-3, p. 18] He asks this court to order the testing which has already been ordered by the State district court.

Petitioner must first seek enforcement of the district court's order in the courts of Louisiana. A number of avenues are available to him – he might consider requesting the District Court to enforce its own order; or, should that fail, he might seek the supervisory jurisdiction of the court of appeals and the Louisiana Supreme Court. In any event, until such time as he shows either the exhaustion of such state court remedies, or the absence of such remedies, this court may not grant him the relief he seeks.

The undersigned is unable to determine whether or not this

claim would be procedurally barred in the Louisiana Courts and therefore, dismissal of this claim should be without prejudice to petitioner's right to re-urge this claim upon the exhaustion of available remedies.

**ACCORDINGLY,**

**IT IS RECOMMENDED** that **Claim 2 (Jury Instruction, Penalty for Manslaughter), Claim 3 (Selection of Grand Jury Foreperson), and Claim 4b (Presumption of Sanity)** of instant petition for *habeas corpus* be **DENIED AND DISMISSED WITH PREJUDICE** as technically exhausted but procedurally defaulted;

**IT IS FURTHER RECOMMENDED** that **Claims 1 (Capacity to Proceed) and 4a (Ineffective Assistance of Counsel)** of the instant petition for writ of habeas corpus be **DENIED AND DISMISSED WITH PREJUDICE** pursuant to the provisions of Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts; and,

**IT IS FURTHER RECOMMENDED** that **Claim 5 (DNA Testing)** be **DENIED AND DISMISSED WITHOUT PREJUDICE** because petitioner failed to exhaust available state court remedies prior to filing his petition.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this Recommendation have ten (10) business days from service of this Report and Recommendation

to file specific, written objections with the Clerk of Court. A
party may respond to another party's objections within ten (10)
days after being served with a copy of any objections or response
to the District Judge at the time of filing.

**Failure to file written objections to the proposed factual
findings and/or the proposed legal conclusions reflected in this
Report and Recommendation within ten (10) days following the date
of its service, or within the time frame authorized by
Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking
either the factual findings or the legal conclusions accepted by
the District Court, except upon grounds of plain error.** *See,*
Douglass v. United Services Automobile Association, **79 F.3d 1415
(5th Cir. 1996).**

**THUS DONE AND SIGNED** in Chambers at Alexandria, Louisiana,
this ____ day of _____, 2006.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE